Harry G. Wellington v. Commissioner.
Harry G. Wellington v. Commissioner
Docket No. 16816.
United States Tax Court
1949 Tax Ct. Memo LEXIS 186; 8 T.C.M. (CCH) 492; T.C.M. (RIA) 49118; May 16, 1949
*186 Spaulding F. Glass, Esq., 135 S. La Salle St., Chicago, Ill., for the petitioner. Achilles H. Moorman, Jr., Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: This proceeding was brought for a redetermination of a deficiency of $7,648.55 in petitioner's income tax for 1943. By amended answer respondent has claimed $225 increased deficiency. The primary question is the validity for tax purposes of an alleged partnership between petitioner and his wife. Respondent has determined that all of the income of the Wellington Trunk and Case Company for 1943 is taxable to petitioner. Error is also charged by petitioner in respondent's determination that the entire gain realized upon the distribution of corporate assets on dissolution as of June 30, 1943, was taxable to petitioner. It is with respect to this issue that respondent seeks the increased deficiency. It is agreed that the determination of the correct amount of petitioner's earned income credit for 1943 is a matter of computation to be disposed of under Rule 50. The case was submitted upon a stipulation of facts and evidence adduced at the hearing. The facts hereinafter appearing *187 which are not from the stipulation are otherwise found from the record. Findings of Fact The stipulated facts are hereby found accordingly. Petitioner, who resides in Oak Park, Illinois, filed his Federal income tax return for 1943 with the collector of internal revenue for the first district of Illinois. Petitioner married Blanche M. Wellington on June 2, 1919. Prior to her marriage Blanche had been employed by Sears, Roebuck and Company, and for five years immediately preceding her marriage she had held the position with that company of secretary to the manager of the printing building. Upon her resignation, two weeks prior to her marriage, she received $808.66 from the company's Employee's Savings and Profit Sharing Fund. She also owned $600 or $700 of Liberty bonds, and had some cash. After her marriage whatever funds remained, after buying her trousseau, dishes and other articles, were deposited in petitioner's bank account. Neither petitioner nor Blanche were able to recall whether this account was ever made a joint account of petitioner and Blanche. Blanche's unmarried sister, Ella Husar, came to live with the Wellingtons in 1920, and continued to make her home with *188 them until her death on December 16, 1943. Ella was a dressmaker and had her own income from such work. She also kept house, tended the children, cooked, and sewed. The Wellington children are Elaine, born in 1920, Barbara, born in 1923, and Marjorie, born in 1931. In 1926 petitioner and Blanche purchased a home in Oak Park, Illinois. They paid $4,000 in cash, assumed a first mortgage for $4,000, and a second mortgage of $1,500, and further encumbered the property at the time of the purchase by a third mortgage of $3,400, making an aggregate indebtedness of $8,900. No showing is made of the manner or dates of the payments of such mortgages. Petitioner started to work when he was 15 years old for his father who was in the harness business. In 1915 petitioner became associated with the Taylor Trunk Works which engaged in the business of manufacturing sample cases, luggage, and trunks. Petitioner continued with the company until his resignation in 1930, shortly after the death of L. B. Taylor. Petitioner worked in the factory for three years as superintendent, and for twelve years as a salesman. In 1930 petitioner heard of the failure of a business known as McNamara Trunk Works, *189 and after negotiations purchased the assets of that business for $900. The $900 was paid by check drawn on the bank account above referred to. Petitioner regarded this $900 as his personal money. The $900 was all the money in the account, and after its withdrawal the account was closed. Petitioner had attempted to raise money at this time on his house but had been unable to do so. Blanche thought her brother, Robert Husar, might help them obtain additional money. He agreed to lend what was needed. Petitioner's family had no financial means to aid him. Robert Husar was engaged in the manufacture of grinding wheels. He had no experience in the luggage business and agreed to lend the money without any idea of going into such a business. He was disposed to help petitioner because petitioner and Blanche had given Ella a home. Husar advanced $2,500 August 15, 1930, and $1,000 July 15, 1931. Petitioner and his wife both signed promissory demand notes to Husar for repayment of the money with interest. On August 15, 1930, $1,000 was borrowed from Ella. Petitioner and his wife both signed a promissory demand note to her order for that amount with interest. Petitioner gave Husar the notes for *190 his protection. The Wellington Trunk and Case Company was organized under Illinois law on August 15, 1930, and engaged in the manufacture of sample cases, trunks, and luggage. It also purchased for subsequent resale, at retail, manufactured luggage such as brief cases and suit cases. The company specialized in making salesmen's sample cases and special types of leather cases such as cases for telephones, all of which were manufactured according to blueprints and specifications furnished by those placing the orders. Upon incorporation the company's authorized capital was $10,000 with $100 par value common shares. As of August 20, 1930, the books of the company disclosed the issuance of 66 shares of stock as follows: Cer-
tificate
Num-
Num-
ber of
Par
To
ber
Shares
Value
Blanche
1
1
$ 100.00
Robert E. Husar
2
10
1,000.00
Petitioner
3
20
2,000.00
Petitioner
4
35
3,500.00 The corporate records also show the issuance of shares of stock on July 15, 1931, as follows: Cer-
tificate
Num-
Num-
ber of
Par
To
ber
Shares
Value
R. E. Husar
5
10
$1,000.00
Petitioner
7
10
1,000.00
Under date of *191 June 10, 1943, Blanche was issued certificate numbered 1A for 20 shares, which the stock certificate book shows was in exchange for original certificate No. 2 for 10 shares, issued August 20, 1930, and original certificate No. 5 for 10 shares, issued July 15, 1931, to Robert E. Husar. Under date of June 25, 1943, Blanche was issued certificate numbered 2 for 22 shares, and on the same day petitioner was issued certificate numbered 3 for 43 shares, and the stock certificate book shows that these 65 shares were transferred from and replaced original certificates No. 3 for 20 shares, and No. 4 for 35 shares, dated August 20, 1930, and No. 7 for 10 shares, dated July 15, 1931, all of which were issued to Harry G. Wellington. Appropriate documentary stamps, properly canceled, appear on these stock certificate stubs. The 86 shares outstanding on June 30, 1943, were surrendered to the corporation on dissolution. The corporate records show that the first meeting of the stockholders of Wellington Trunk and Case Company was held August 15, 1930, and that the stockholders of that company, all of whom were present, were: H. G. Wellington, Blanche M. Wellington, and R. E. Husar, and that they *192 were elected the directors of the company at this meeting, also that the first meeting of the board of directors was held the same day and adopted the by-laws of the corporation, and on the same day the directors elected the following officers of the corporation: H. G. Wellington (petitioner) President R. E. Husar, Vice-President Blanche M. Wellington, Secretary and Treasurer Also at this meeting, it is disclosed that petitioner reported that he had purchased the assets of J. H. McNamara Trunk Company, which formerly occupied the premises then occupied by the Wellington Trunk and Case Company (229-231 West Illinois Street, Chicago), and offered to sell such assets to the company for $2,000, payable in stock of the company, petitioner stating that he had purchased such assets for the sum of $900; that the board of directors accepted the proposition made and authorized the president and secretary to issue and deliver to petitioner 20 shares of the common stock of the company in payment for the property, together with the good will and business of J. H. McNamara Trunk Company. Thereafter the directors and officers were re-elected periodically, and on January 2, 1942, the directors *193 voted petitioner a salary of $10,000 for 1942, as president of the company, and on January 2, 1943, the directors voted petitioner a salary of $10,000 for 1942. A special meeting of the stockholders held June 28, 1943, adopted a directors' resolution providing for the abandonment of the corporate franchise, the dissolution of the corporation and the distribution of its assets as of the close of business June 30, 1943. The corporation's books of account show that capital stock was subscribed August 15, 1930, at a total par value of $6,600, that the stock was issued, and that on August 15, 1930, the corporation acquired assets and property as follows: Machinery and equipment *
$1,200.00
Inventories *
800.00
Cash in First Union Trust and Savings
Bank of Chicago
2,500.00
Cash in the Merchandise Trust and
Savings Bank of Chicago
2,000.00
The books of account also show a further subscription and issuance of paid-up shares of a par value of $2,000 in 1931. These were the shares issued July 15, 1931, to Robert Husar and petitioner, as set forth above. The corporation received no consideration from Blanche *194 for the one share of stock shown to have been issued to her. At the time of liquidation on June 30, 1943, the corporation had 86 shares of stock outstanding shown on the records to be held by petitioner and Blanche in equal amounts of 43 shares. A document captioned "Agreement," dated June 10, 1943, purported to bear the signatures of Robert Husar and Blanche. The document recites that on June 10, 1943, Husar was the owner of 20 shares of the corporation's capital stock which he sold to Blanche for $4,200, of which $2,500 was to be paid on the signing of the agreement, and $1,700 was to be paid on or before December 1, 1944. This transfer was reflected on the records of the corporation by the issuance of Certificate 1A for 20 shares to Blanche on June 10, 1943, as already set forth. The foregoing agreement was not actually signed by Blanche or by Husar. Petitioner signed "R. E. Husar" and "Blanche M. Wellington" to this agreement. He had made an oral agreement with his brother-in-law with reference to the stock. The written agreement had been prepared by a lawyer named Paul Preston, who also prepared the partnership agreement hereinafter set forth. Paragraph V of the petitioner *195 in this case states that Blanche acquired Husar's stock under a contract dated June 10, 1943, between Husar and Blanche "as parties excontractu." Petitioner verified this under oath. For 1943 Robert Husar's return reflected a long-term capital gain of $500 with respect to Wellington Trunk and Case Company. His return for 1944 reflected a long-term capital gain of $1,700 with respect to the company. On March 19, 1944, petitioner filed a gift tax return for 1943 which reflected a gift of 22 shares of the common stock of Wellington Trunk and Case Company valued at $8,000. Petitioner signed this return and an information return accompanied it containing handwriting purporting to be the signature of "B. M. Wellington" as donee. Blanche did not sign the return but her name was signed by petitioner. Petitioner filed the gift tax return on the advice of his attorney, Paul Preston. Under date of July 1, 1943, petitioner and Blanche executed an instrument which recited that they were the equal owners of the tangible assets of the Trunk Company, subject to its liabilities; that they desired to continue the business of the company as a partnership; and agreed to do so for a term of five *196 years beginning July 1, 1943. It was stated that they agreed to have an equal interest in the assets of the business; that they would contribute in equal shares any additional capital, any unequal advances to be deemed a loan; that the moneys of the business were to be deposited in a bank account in the name of the business; that the net profits of the business were to be divided at the end of each fiscal year with 60 per cent to petitioner and 40 per cent to Blanche; that each of the parties should devote as much time and attention to the business "as shall be necessary from time to time, and not carry on any other business without mutual written consent of the other party"; that they would be required to obtain the written consent of each other to effect certain financial transactions or deal with certain interests or individuals. The instrument also provided a monthly drawing against their respective profits but did not designate the amount in the blank provided therefor. Withdrawal from the partnership called for notice in writing and a settlement of the amounts due in accordance with the agreement. No consideration was to be given to any valuation of good will unless it appeared *197 upon the books of the business. The books of the corporation disclose that during its existence its net income was as follows: Net Income
Period
Per Books
From 8/15/1930
[ 658.17) Loss
1931
682.44
1932
(1,336.55) Loss
1933
(1,374.50) Loss
1934
( 241.03) Loss
1935
(1,964.07) Loss
1936
2,057.84
1937
2,504.60
1938
( 298.63) Loss
1939
363.79
1940
( 473.91) Loss
1941
6,486.31
1942
3,651.88
1st 1/2 of 1943
7,055.87
During the existence of the corporation its books disclose that the following amounts were credited to the account "Accounts Payable-Officers, No. 2134" and debited to the account entitled "Salesmen's and Officers' Salaries No. 531," and were withdrawn from the corporation by petitioner: 1930
$ 738.18
1931
3,637.35
1932
3,665.00
1933
2,400.00
1934
3,356.54
1935
4,646.40
1936
4,827.85
1937
6,852.53
1938
6,957.18
1939
7,012.56
1940
6,170.16
1941
9,789.38
1942
9,982.60
Period Jan. 1, 1943
to June 30, 1943
4,854.53
The corporation never paid a dividend to stockholders, and Blanche was not paid a salary for any services she may have performed. The money borrowed from Husar in 1930 and *198 1931, and the $1,000 borrowed from Ella Husar in 1930 was repaid by petitioner during the period 1930 to June, 1942, from his salary from the corporation. The purchase price of $4,200 which Husar received for his 20 shares of Wellington stock was paid as follows: $2,500
by check of the alleged partnership dated
August 31, 1943;
850
by check of the alleged partnership dated
January 8, 1944; and
850
by check on the joint bank account of
petitioner and his wife dated December
29, 1944.
Blanche never withdrew any portion of her alleged share of the business profits. The business income was treated the same after the execution of the agreement as before, without regard to the division of profits provided in the agreement. Husar never devoted any time to the business of the corporation. Blanche, although nominally holding the title of secretary-treasurer of the corporation, never signed a corporation check. She did no buying for the corporation. In a protest, dated December 11, 1946, filed by petitioner with respondent in the matter at bar, it was stated that Blanche from 1941 to July 2, 1943, continued to maintain full charge of the general books *199 of the corporation. During that period Joe B. McCann was bookkeeper and petitioner, and not Blanche, directed him in the duties he performed. The minutes of the corporation many times indicate that Blanche was present at the meetings. She was never present at any of the stockholders' or directors' meetings, and never participated in these aspects of the corporation's activities. The only time she ever discussed the business with petitioner or her brother was in her own home. The signature of "B. M. Wellington" under oath before a notary in connection with the corporation's excess-profits tax return Form 966 was in petitioner's handwriting, as was her signature as secretary elsewhere on the form. The signature purporting to be that of "Blanche M. Wellington" on her 1943 individual tax return, although identified by her at the hearing herein as her signature, was in petitioner's handwriting. She was aware of petitioner's practice of signing her name on documents. Petitioner dissolved the corporation and formed the alleged partnership to reduce his corporate taxes and income taxes. There was no business purpose for this transaction. Petitioner and his wife did not really and *200 truly intend to join together to conduct the business as a partnership and there was no partnership for Federal income tax purposes. All the outstanding capital stock of the Wellington Trunk and Case Company, an Illinois corporation, was owned by petitioner at the time the corporation was dissolved as of June 30, 1943, and the entire gain realized on the distribution of its assets is taxable to petitioner. Opinion The primary dispute between the parties has been what were the actual facts relating to the business and the creation of the alleged partnership. Our findings of fact have resolved these disputes and are dispositive of the case. The stories told by the interested witnesses were so inconsistent and self-contradictory and import so little recognition of the significance of formal representations that we have been unable to rely upon much of their testimony. We have not been able to find that petitioner has sustained his burden of establishing facts demonstrating that the partnership "is real within the meaning of the federal revenue laws." . Petitioner admitted to a "tax-saving" motive for the attempted partnership, and *201 we perceive no business purpose for its formation. At no time do we believe the wife participated at a managerial level, contributed additional vital services, or supplied capital. She may well have had a wifely interest in petitioner's business. See ; . But this was as prevalent during the time the business was operated as a corporation, in which she owned no stock as during the putative partnership. And we are unable to trace any part of the money she brought to the marriage in 1919 into the present business in 1943. Petitioner concedes the taxability of the transaction on the dissolution of the corporation to the extent of one-half of the corporate stock. Respondent seeks to include the gain on all of the stock in petitioner's income. Here again, petitioner has failed to convince us that he was not in fact the owner of all of the corporate stock. On the contrary, there is strong evidence that petitioner at this time was and regarded himself as being the owner of all of it. It is with respect to this issue that respondent claims the increased deficiency of $225, founded upon the development at *202 the trial of a lower basis for the stock than that originally claimed. As to this, respondent has carried the burden of proof imposed upon him and established that the correct basis for the stock was $5,400, instead of the $6,300 allowed in the notice of deficiency. Decision will be entered under Rule 50. Footnotes
*. Property for the common shares above referred to.↩